KAPALCZYNSKI *v.* GLOBE CONSTRUCTION COMPANY

1. NEGLIGENCE—CONTRACTS—ACCEPTED WORK DOCTRINE—LIABILITY
   —THIRD PERSON.
      The accepted work doctrine which insulates a contractor from lia-
      bility for foreseeable harm to third persons resulting from
      his negligent performance of a completed contract, is not the
      law in Michigan.

2. NEGLIGENCE — CONTRACTS — PRIVITY — CONTRACTORS — THIRD
   PERSONS.
      Michigan courts have abandoned the privity of contract require-
      ment in third-person negligence actions against contractors.

3. NEGLIGENCE—MANUFACTURERS—CONTRACTORS—LIABILITY.
      There is no basis for a distinction between the liability of prod-
      ucts manufacturers and contractors for negligence.

4. NEGLIGENCE—CONTRACTORS—CONSTRUCTION—TIME LAPSE—INJURY
   —PROXIMATE CAUSE.
      The passage of time does not necessarily confer immunity on a
      wrongdoer; a lapse of time between construction and injury
      is simply one of the factors the trier of fact should consider
      in deciding whether a contractor's original negligence was
      the cause of injury.

5. NEGLIGENCE—JOINT TORTFEASORS—GOVERNMENTAL IMMUNITY—LI-
   ABILITY.
      The governmental tort liability statute did not eliminate the
      common-law liability of nongovernmental tortfeasors whose con-
      curring acts of negligence with a governmental entity contribute
      to plaintiff's loss (MCLA § 691.1401 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Negligence §§ 20–22.
[2] 38 Am Jur, Negligence §§ 21, 22.
[3] 46 Am Jur, Sales § 12.
[4] 38 Am Jur, Negligence §§ 50, 55.
[5, 6] 38 Am Jur, Negligence § 64.
   49 Am Jur, States, Territories and Dependencies §§ 91, 96.
   39 Am Jur 2d, Highways, Streets, and Bridges §§ 112, 343, 344, 346.
[7] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 363, 364, 390,
   432, 433.

6. NEGLIGENCE—JOINT TORTFEASORS—GOVERNMENTAL IMMUNITY.
   The governmental tort liability act reveals neither language nor
   intent to limit liability solely to governmental entities and, in
   defining the extent of sovereign immunity in certain areas,
   the legislature did not alter the tort liability of nongovern-
   mental tortfeasors whose negligence may concur with negligence
   of a governmental entity in contributing to a plaintiff's loss
   (MCLA § 691.1401 et seq.).

7. NEGLIGENCE—HIGHWAYS—CONSTRUCTION CONTRACTS—LIABILITY.
   Defendant construction contractor who had resurfaced a city
   street in a manner claimed to be negligent by plaintiff who
   was injured about a year after the work was done by falling
   into a hole in the street at an access point for a gas line was
   not insulated from liability by the fact that the city had ac-
   cepted the work or by the governmental immunity of the city,
   and accelerated judgment in favor of the contractor was error.

Appeal from Manistee, Charles A. Wickens, J.
Submitted Division 3 January 8, 1969, at Grand
Rapids. (Docket No. 4,578.) Decided October 2,
1969.

Complaint by Thomas Kapalczynski and Kath-
leen Kapalczynski against Globe Construction Com-
pany and Michigan Consolidated Gas Company to
recover damages resulting from injuries sustained
by Kathleen Kapalczynski when she fell into a
street hole at an access point to gas transmission
lines. Accelerated judgment for defendants. Plain-
tiffs appeal. Reversed and remanded for trial.

*Donald G. Jennings,* for plaintiffs.

*Hathaway, Latimer, Clink & Robb* (*William T.
Kerr,* of counsel), for defendant Globe Construction
Company.

*John E. Hart,* for defendant Michigan Consol-
idated Gas Company.

Before: Levin, P. J., and Holbrook and Danhof, JJ.

Levin, P. J. The plaintiffs, Thomas Kapalczynski and Kathleen Kapalczynski (husband and wife), commenced this action to recover damages resulting from injuries sustained by Kathleen Kapalczynski when she fell into a hole in a street in Manistee, Michigan. The hole was at an access point to gas transmission lines running under the street. The access point and the transmission lines are owned by defendant Michigan Consolidated Gas Company.[1] Defendant Globe Construction Company had resurfaced the street in September, 1965, a little over a year before the date, November 10, 1966, on which Mrs. Kapalczynski was injured. The plaintiffs covenanted not to sue the city of Manistee before this action was commenced.

The trial judge granted a motion for accelerated judgment and dismissed the complaint. He ruled that the city was primarily liable and that the defendants had no contractual obligation to the plaintiffs. For purposes of this appeal, we assume the truth of the plaintiffs' pleaded allegations that Mrs. Kapalczynski's injuries were caused by the defendants' negligence.

The principal issue concerns the liability of a contractor after completion and acceptance of negligently-done work. In many jurisdictions the accepted work doctrine has insulated a contractor from liability for foreseeable harm to third persons resulting from his negligent performance of a completed contract. The conceptual bases of this doctrine are the absence of privity of contract between the contractor and the third person, the third person's nonreliance on the contract between the de-

---

[1] The gas company did not file a brief in our Court.

fendant contractor and the owner, and the asserted lack of a "proximate" causal connection because of the intervening negligence of the owner in accepting and thereafter maintaining the work.

Most courts have grafted exceptions to this rule of nonliability. Contractors have been held liable in cases where it was shown that the defective condition was imminently dangerous to life, or the contractor knew of the defect or willfully concealed such knowledge, or the condition created a nuisance, or the plaintiff's use was intended or anticipated or, as it was sometimes put, the plaintiff was "impliedly invited."[2]

For reasons which we will now relate, we have concluded that the accepted work doctrine is not the law in Michigan and, accordingly, remand this case for trial. This conclusion is based on a series of cognate decisions establishing the right of injured persons to recover in products liability cases.

The leading case in Michigan (and a leading case in the law nationally) is *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.* (1958), 353 Mich 120, where a manufacturer of cinder building blocks was held accountable for property damage caused by defective blocks which had been used in the construction of the plaintiff's home. The Court viewed the question before it to be (p 128) "whether we are going to continue to be hobbled by such an obsolete rule [privity] and its swarming progeny of exceptions." The Court abandoned the privity requirement after a thorough résumé of its complex history and a review of the historic decision in *MacPherson* v. *Buick Motor Co.* (1916) 217 NY 382 (111 NE 1050).

---

[2] Prosser, Law of Torts (3d ed), § 99, pp 694, 695; 2 Harper & James, The Law of Torts, § 18.5, p 1041.

*Three Rivers* was followed by *Manzoni v. Detroit Coca-Cola Bottling Company* (1961), 363 Mich 235; *Barefield v. La Salle Coca-Cola Bottling Company* (1963), 370 Mich 1; *Hill v. Harbor Steel & Supply Corporation* (1965), 374 Mich 194, and, most recently, *Piercefield v. Remington Arms Company, Inc.* (1965), 375 Mich 85, where an innocent bystander, injured when the barrel of a shotgun exploded because of a claimed defect in the ammunition used, was allowed to proceed to trial against the manufacturer of the ammunition, and the wholesaler and retailer. In a cogent opinion summarizing the law developed in the cited cases, the *Piercefield* Court stated that an injured plaintiff may recover upon proof of (pp 98, 99) "a defect attributable to the manufacturer and a causal connection between the defect and the injury or damage of which he complains."[3]

Whether the accepted work doctrine has survived this emphatic rejection of the privity requirement in products liability cases, is, we believe, now a somewhat rhetorical question.[4]

Although the accepted work doctrine is referred to in *Benton Harbor Malleable Industries, Inc. v. Pearson Construction Company* (1957), 348 Mich 471, the Court did not base its decision on that doctrine. The plaintiff (who sued as subrogee of a

---

[3] Similarly, see *Serijanian v. Associated Material & Supply Co.* (1967), 7 Mich App 275, involving defective bricks in the plaintiff's home.

[4] *Cf. Spector Motor Service, Inc. v. Walsh* (CA 2, 1943), 139 F2d 809, 814, 823, *remanded* on other grounds *Spector Motor Service, Inc. v. McLaughlin* (1944), 323 US 101 (65 S Ct 152, 89 L Ed 101); *Putman v. Erie City Manufacturing Company* (CA 5, 1964), 338 F2d 911, 921, 923; *Necaise v. Chrysler Corporation* (CA 5, 1964), 335 F2d 562, 572, 573.

See, also, *Picard v. United Aircraft Corporation* (CA 2, 1942), 128 F2d 632; *Maxfield v. Denver and R. G. W. R. Co.* (1958), 8 Utah 2d 183 (330 P2d 1018); *Watts v. Pioneer Corn Company, Inc.* (CA 7, 1965), 342 F2d 617; *Gardella v. Chandler* (CA 2, 1949), 172 F2d 402, 409, Judge Frank's opinion.

third person) had employed the defendant contractor to install a large complex machine in the plaintiff's plant. The plaintiff had supervised the installation of the machine with bolts that it supplied. The Supreme Court ruled (p 481) that the contractor was not liable for an injury which occurred when one of the devices broke loose from its moorings because (1) there was no proof that the defendant was negligent, (2) the plaintiff's negligence in failing to inspect the machine was the cause of the injury,[5] and (3) plaintiff could not hold the defendant responsible for fastening the device with bolts furnished by, and inserted under, plaintiff's orders and instructions.[6]

---

[5] We are persuaded that *Benton Harbor* should not be read as holding as a matter of law that a contractor's negligence is never the cause of the injury when the owner has had an opportunity to inspect and failed to do so.

Causation is generally a question of fact, not of law. Rarely will the fact that the plaintiff's loss is caused by the concurrent negligence of two tortfeasors be held as a matter of law to relieve one of them of liability because the negligence of the other intervened. See *Strandholm* v. *General Construction Company* (1963), 235 Or 145 (382 P2d 843); 2 Restatement of Torts 2d, § 452, p 482.

In their discussion of intervening cause, Professors Harper and James observed:

"In the case of builders and other contractors in construction work, a rule once prevailed that exonerated the contractor for injuries to third persons caused by defective construction but occurring after the employer had accepted the work. This will be recognized as an offspring of the privity rule and the last-wrongdoer rule. Both lines of holdings represent anachronistic and unwarranted exceptions to general negligence principles and are being progressively repudiated by the courts." 2 Harper & James, The Law of Torts, § 28.10, pp 1556, 1557.

It was entirely understandable that the *Benton Harbor* Court concluded that a loss caused by plaintiff's own neglect should bar recovery, but here the defendants claim that the negligence of another tortfeasor [the city] intervened.

Furthermore, there is no evidence that the city was aware of the alleged defect and, if it was, for how long before the accident it had such knowledge. Nor is there anything in the record showing that the city failed to inspect, and that if it had done so it would have discovered the defect. No affidavits or other evidence were submitted in support of plaintiff's motion.

[6] The plaintiff in *Benton Harbor* was the subrogee of its injured employee who had obtained a recovery under the workmen's com-

In *Benton Harbor,* the plaintiff conceded that the (p 479) "general rule is that an independent contractor is not liable for injuries to third parties, where he has completed the work and turned it over to the contractee, but claim[ed] there is an exception where * * * defendant's work was so negligently performed as to be imminently dangerous to third parties." The concession of the *Benton Harbor* plaintiff that the accepted work doctrine is the "general rule" means that the question whether the accepted work doctrine is part of our jurisprudence was assumed, not decided, in *Benton Harbor.*[7]

In *Sitta* v. *American Steel & Wire Division of U. S. Steel Corporation* (CA6, 1958), 254 F2d 12, a products liability case involving a defective excavating machine, *Benton Harbor* was interpreted not as a departure from the modern rule eliminating the requirement of privity, but as a case where the contractor did not cause the injury. *Benton Harbor's* precedential value is further undermined by the fact that two of the cases which it cites have been overruled; both New Jersey and New Mexico have now adopted the so-called modern rule.[8]

A final reason for concluding that the accepted work doctrine is not part of our law is its overwhelming rejection in other jurisdictions.[9] Most courts which have recently considered the question have concluded that there is no basis for a distinction between products liability and contractor's liability. The distinctions often advanced to justify

---

pensation act. The court, nevertheless, counted against the plaintiff its own neglect as a separate reason for denying recovery.

[7] See *Chapman* v. *Buder* (1968), 14 Mich App 13, 20, and cases therein cited.

[8] Compare *Miller* v. *Davis & Averill, Inc.* (1948), 137 NJL 671 (61 A2d 253), with *Totten* v. *Greezen* (1968), 52 NJ 202 (245 A2d 1), and *Wood* v. *Sloan* (1915), 20 NM 127 (148 P 507, LRA1915E 766) with *Baker* v. *Fryar* (1966), 77 NM 257 (421 P2d 784).

[9] See cases discussed and cited *infra.*

a different rule of law for contractors than the rule now almost universally applicable to manufacturers, such as the lack of a standard product, the greater difficulty in finding defects in a contractor's "special" job, the more thorough inspection given a contractor's work, and the greater time lapse between construction and injury, have been treated simply as problems of proof in individual cases rather than justifications for a different rule of law. Rather than perpetuate the quagmire of exceptions to the accepted work doctrine, once also characteristic of the products liability sector, these courts chose fully to accept the *MacPherson* precedent—a resolution advocated by well-regarded commentators.[10]

In this connection the recent decision of our Supreme Court in *Hill* v. *Harbor Steel & Supply Corporation, supra,* is particularly relevant. The estate of a workman who lost his life when a manifold welding unit exploded was allowed to maintain an action against the contractor that "designed and built" the unit for the workman's employer. The unit, thus, was not a "standard" product, it was a "special" job; it could have been more thoroughly inspected. The unit had been delivered to the deceased workman's employer nine months before the explosion. Yet the third person was allowed to recover for a loss caused by the contractor's negligence.

---

[10] See 2 Harper & James, The Law of Torts, § 18.5, pp 1039–1043, supp to vol 2, p 74; Restatement, Torts, 2d, § 385, p 293; Prosser, Law of Torts (3d ed), § 99, pp 693–696.

Similarly, see Building Contractors Liability: An Extension of *MacPherson* v. *Buick*, 24 Ind LJ 286 (1949); Construction and Repair Contractors—Liability to Third Persons After Acceptance of Work by Owner, 19 La L Rev 221 (1958); Note, 62 Harv L Rev 145 (1945).

The changing weight of authority appears upon a comparison of the annotations in 13 ALR2d 191 (1950) and 58 ALR2d 865 (1958); both annotations are entitled "Negligence of building or construction contractor as ground of liability upon his part for injury or damage to third person occurring after completion and acceptance of the work."

' Several of the opinions of other courts, concerning factual situations analogous to the case at bar, are worthy of detailed discussion. In *Strakos* v. *Gehring* (Tex, 1962), 360 SW2d 787, a pedestrian was injured when he stepped into a hole left unfilled alongside a road. Both the contractor employed by the State of Texas to resurface the road and the contractor who was to do the necessary dirt work were named as defendants. The court emphasized that (p 790):

"Our rejection of the 'accepted work' doctrine is not an imposition of absolute liability on contractors. * *. * The effect of our holding is to bring [the contractor] within the general rules of tort litigation, where the jury will resolve the basic questions of negligence and proximate cause, subject to the usual guidance and review by the trial and appellate courts."

The court observed that, except where reasonable minds cannot differ, the issues of intervening negligence and causation are to be resolved by the trier of fact.

In *Baker* v. *Fryar* (1966), 77 NM 257 (421 P2d 784), when the defendant contractor completed his work a hole was left near the curb of a roadway. The plaintiff stepped into the hole. The trial court found as a matter of law that the contractor's negligence was a remote cause of the injury. The New Mexico Supreme Court rejected this determination, saying that the failure of an owner to inspect or to act to prevent harm after discovering that work has been done improperly is not necessarily a superseding cause. Such a failure of an owner subjects him to a liability which is concurrent with that of the contractor, but does not, as a matter of law, absolve the contractor of his negligence.

*Russell* v. *Arthur Whitcomb, Inc.* (1956), 100 NH
171 (121 A2d 781), involved a sewer line excavated
and filled in by the defendant contractor who negli-
gently left a depression in the road. Traffic passing
over the depression caused vibrations which dam-
aged the plaintiff's basement. The New Hampshire
Supreme Court adopted the view that construction
contractors are liable to third persons for injuries
suffered after the owner's acceptance of negligently-
done work. Similarly, see *Krisovich* v. *John Booth,
Inc.* (1956), 181 Pa Super 5 (121 A2d 890), where
the plaintiff fell on a sidewalk because of the defec-
tive backfill of an excavation for a gas line.[11]

Several cases have dealt with this issue in the
factual context of a considerable lapse of time be-
tween the completion of the contractor's work and
the injury and, nevertheless, allowed the injured
plaintiff to recover.[12] They hold that lapse of time
is merely one of the factors to be considered by the
trier of fact in deciding whether the contractor's
original negligence was the cause of the injury.

---

[11] For other well-reasoned decisions rejecting the accepted work
doctrine, see *Talley* v. *Skelly Oil Co.* (1967), 199 Kan 767 (433 P2d
425, 432) (overhead heater negligently installed); *Strandholm* v.
*General Construction Company* (1963), 235 Or 145 (382 P2d 843);
*Dow* v. *Holly Manufacturing Company* (1958), 49 Cal 2d 720 (321
P2d 736); *Schipper* v. *Levitt & Sons, Inc.* (1965), 44 NJ 60 (207 A2d
314). In *Schipper* the Supreme Court of New Jersey applied the
rule of the landmark case of *Henningsen* v. *Bloomfield Motors, Inc.*
(1960), 32 NJ 358 (161 A2d 69, 75 ALR2d 1) (cited with approval
in *Three Rivers*) to a mass production builder of private homes.
*Schipper* was followed in *Totten* v. *Greezen* (1968), 52 NJ 202 (245
A2d 1) in an action against the architect, contractor and heating
contractor of an apartment house.
    Similarly, see *Cosgriff Neon Co.* v. *Matthews* (1962), 78 Nev 281
(371 P2d 819, 822); *Fisher* v. *Simon* (1961), 15 Wis 2d 207 (112
NW2d 705); *Moran* v. *Pittsburgh-Des Moines Steel Co.* (CA 3, 1948),
166 F2d 908, 916.
[12] See *Hanna* v. *Fletcher* (1956), 97 App DC 310 (231 F2d 469,
58 ALR2d 847) (defectively installed railing collapsed after seven
years); *Leigh* v. *Wadsworth* (Okla, 1961), 361 P2d 849 (roof of
back porch fell 2-1/2 years after completion of house); *Hale* v.
*Depaoli* (1948), 33 Cal 2d 228 (201 P2d 1, 13 ALR2d 183) (porch
railing collapsed 18 years after installation).

The passage of time does not necessarily confer immunity on a wrongdoer.

The defendants also argue that when the legislature defined the extent of sovereign immunity from tort liability (PA 1964, No 170),[13] the governmental entity (city of Manistee in this case) became the exclusive source of liability. The defendants contend that when a governmental entity is involved, Act 170 has eliminated the common-law liability of nongovernmental tortfeasors whose concurring acts of negligence contributed to plaintiff's loss. A careful examination of the statute reveals neither language nor intent to limit liability solely to governmental entities. In defining the extent of sovereign immunity in certain areas, the legislature in Act 170 did not alter the tort liability of nongovernmental tortfeasors.

Reversed and remanded for trial. Costs to plaintiffs.

All concurred.

---

[13] MCLA § 691.1401 *et seq.* (Stat Ann 1969 Rev § 3.996[101] *et seq.*).