ROBERTSON v SWINDELL-DRESSLER COMPANY

Docket Nos. 77-1729, 77-1730. Submitted January 17, 1978, at Detroit.
—Decided April 4, 1978. Leave to appeal applied for.

Melvin A. Robertson brought a products liability action based upon negligence and breach of implied warranties of fitness against Swindell-Dressler Company and J. B. Webb Company for damages arising from an injury suffered by plaintiff which occurred within the course of his employment with Ford Motor Company. Defendants, as contractor and subcontractor, had contracted with Ford Motor Company for the manufacture and installation of a conveyor system. Plaintiff, in the process of rotating jobs, attempted to step across the moving conveyor, and slipped or lost his balance causing his legs to become entrapped within the conveyor machinery. A jury trial in Wayne County Circuit Court, George T. Martin, J., resulted in a judgment for plaintiff. Defendants cross-claimed against each other for indemnity based upon a contractual clause covering injury to persons and damage to property. The trial court refused to grant any indemnity. Defendants brought separate appeals from both the judgment and the court's refusal to grant indemnity. *Held:*

1. Trial evidence directly placed the issue of foreseeability of possible injury in dispute. Where there can be a reasonable

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur 2d, Negligence § 456.
[2] 57 Am Jur 2d, Negligence § 50.
[3] 57 Am Jur 2d, Negligence §§ 37, 127 *et seq.*
Foreseeability as an element of negligence and proximate cause. 100 ALR2d 942.
[4] 57 Am Jur 2d, Negligence §§ 58, 205.
[5] 57 Am Jur 2d, Negligence §§ 7, 9.
[6] 57 Am Jur 2d, Negligence § 6.
[7] 57 Am Jur 2d, Negligence § 317.
[8] 57 Am Jur 2d, Negligence §§ 334, 345, 360.
[9] 63 Am Jur 2d, Products Liability § 28.
[10] 75 Am Jur 2d, Trial § 906.
[11] 13 Am Jur 2d, Building and Construction Contracts §§ 141–143.
[12] 17 Am Jur 2d, Contracts § 324.
[13] 41 Am Jur 2d, Indemnity §§ 13, 15.

difference of opinion as to the foreseeability of a particular risk the question is for the jury to decide. The claim of negligence was properly placed before the jury in this case and their decision on factual issues is beyond the scope of appellate review.

2. Plaintiff was not precluded from recovery because of contributory negligence. Contributory negligence is generally a question of fact, not law. There was no reason to exempt this case from the general rule that contributory negligence is a matter for the trier of the fact where, based upon trial evidence, reasonable minds could differ on the issue of whether plaintiff proceeded reasonably in the face of obvious peril, particularly when he was required to rotate work stations.

3. Failing to give a requested instruction in a products liability action that a manufacturer of machinery is under no duty to provide an accident proof or foolproof machine is error, but a new trial is not required where the error is not sufficiently prejudicial as to be inconsistent with substantial justice.

4. A right of indemnity between a contractor and a subcontractor for "Injury to Persons and Damage to Property" is enforceable.

Judgment for plaintiff affirmed. Cause remanded for entry of an order granting indemnity from defendant Webb to defendant Swindell-Dressler.

1. NEGLIGENCE—APPEAL AND ERROR—VICARIOUS LIABILITY—RESPONDEAT SUPERIOR—ACTIVE TORTFEASORS.

The potential liability of a defendant in a negligence action cannot be shifted on appeal to a codefendant by a theory of vicarious liability where the defendant was not sued under the doctrine of *respondeat superior,* but as a joint and actively involved tortfeasor, because the vicarious liability theory did not exist at trial.

2. NEGLIGENCE—ACCEPTED WORK DOCTRINE—DEFENSES—CONTRACTOR'S NEGLIGENCE.

The accepted work doctrine has been abolished in Michigan as a defense to an action based on the negligence of a contractor.

3. NEGLIGENCE—DUTY OF CARE—RELATIONSHIP OF PARTIES—PROXIMATE CAUSE—LEGAL OBLIGATIONS—FORESEEABLE CONSEQUENCES.

Duty, in an action for negligence, is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for

the benefit of the injured person; proximate cause encompasses a number of distinct problems including the limits of liability for foreseeable consequences; no duty is owed to an unforeseeable plaintiff, but a duty may arise where injury to a person is within the foreseeable scope of a risk and there is a sufficient relationship to create a legal obligation for the benefit of the injured person.

4. NEGLIGENCE—DUTY OF CARE—QUESTION OF LAW—QUESTION OF FACT.

The question of duty, in a negligence case, is generally decided by the trial court as a matter of law; however, where the facts presented at trial are a matter of dispute, the jury has a function in the decision on whether a duty exists and where there might be a reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of a defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury.

5. NEGLIGENCE—DIRECTED VERDICT—FORESEEABILITY—DISPUTED EVIDENCE—JURY—QUESTION OF FACT—APPEAL AND ERROR.

Denial of a motion for a directed verdict, in a negligence action, was proper where evidence directly placed the issue of foreseeability in dispute; where the claim of negligence was properly placed before the jury, their decision of factual issues is beyond the scope of appellate review.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT—REASONABLE MEN.

Contributory negligence is generally a question of fact, not law, except where plaintiff's own testimony or the undisputed facts of the case make the negligence too plain for reasonable, fair-minded men to draw different conclusions.

7. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—STANDARD OF CARE—PRUDENT PERSON TEST—QUESTION OF FACT.

The ordinary care which a plaintiff must exercise to be free from contributory negligence is such care as an ordinary prudent person would exercise under the same or similar circumstances; each case must depend upon its own particular facts and it is usually a question for the jury; even where the danger is obvious, courts are reluctant to take the issue of the reasonableness of an injured person's actions away from the trier of fact.

8. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—SLIP AND FALL—
KNOWN DANGER—DUE CARE—UNREASONABLE RISK—FORESEEA-
BILITY.

A finding of negligence is not precluded when a cautious plaintiff
slips, falls and is injured in a place where danger is obvious but
he has a right to be or must be; a worker is not contributorily
negligent if he proceeds with caution in an area of possible
danger because it is necessary to do so to give attention to his
work and the risks cannot be lessened and they are unreasona-
ble and foreseeable.

9. PRODUCTS LIABILITY—INSTRUCTIONS TO JURY—FOOLPROOF MACHINE
—APPEAL AND ERROR—PREJUDICE—MISCARRIAGE OF JUSTICE—
COURT RULES.

A trial court is required to give a requested instruction that a
manufacturer of machinery is under no duty to provide an
accident proof or foolproof machine; however, the Court of
Appeals will not order a new trial where it finds the failure to
give such an instruction was not sufficiently prejudicial or that
the error did not result in a miscarriage of justice (GCR 1963,
529.1).

10. APPEAL AND ERROR—INSTRUCTIONS TO JURY—FAILURE TO OBJECT
—CONSIDERATION OF ISSUES.

Failure to object to jury instructions does not prevent the Court
of Appeals from treating an issue as if there had been an
objection in order to resolve any doubts as to the basis of its
eventual decision.

11. INDEMNITY—NEGLIGENCE—CONTRACTS—PERSONAL LIABILITY—
PROPERTY DAMAGE—PUBLIC POLICY—STATUTES.

An indemnity provision in a construction contract which seeks to
protect the promisee from liability for personal or property
damage arising from the sole negligence of the promisee is void
as against public policy (MCLA 691.991; MSA 26.1146[1]).

12. CONTRACTS—VOID SECTION—SEVERABILITY.

A general rule of contract law is that a void section of an
otherwise valid provision can be severed if it is not an essential
part of the whole.

13. INDEMNITY—CONTRACTS—STRICT CONSTRUCTION—RESOLUTION OF
AMBIGUITIES—AGAINST DRAFTER.

Indemnity clauses are to be strictly construed and all ambiguities
must be resolved against the party who drafts them.

*Joselyn, Rowe, Jamieson & Grinnan, P. C.* (by *Lawrence A. Bohall),* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy,* for defendant Swindell-Dressler Company.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen,* for defendant J. B. Webb Company.

Before: T. M. BURNS, P. J., and M. F. CAVANAGH and D. C. RILEY, JJ.

D. C. RILEY, J. The present action involves a products liability suit arising from an injury suffered by plaintiff which occurred within the course of his employment with Ford Motor Company. Following a lengthy trial, the jury found both defendants negligent and awarded plaintiff $931,-000. Both defendants have appealed, and the matters have been consolidated within this opinion.[1]

On April 26, 1972, plaintiff was employed by Ford at its Flat Rock Casting Plant. His job involved assisting rough-cast engine blocks in moving along a system of conveyors. Plaintiff worked with two other men at the conveyor system, and would rotate job positions at half-hour intervals. While in the process of rotating jobs plaintiff attempted to step across the moving conveyor, but slipped or lost his balance, causing his legs to become entrapped within the conveyor's machinery. As a result of this accident he incurred serious injuries, including ultimately the amputation of a leg.

[1] At oral argument counsel for defendant Webb informed this Court that pursuant to an out-of-court agreement Webb's appeal as towards plaintiff had been withdrawn, but that Webb was not abandoning its cross-appeal against defendant Swindell. Accordingly, this opinion will discuss only the issues raised by Swindell's appeal against plaintiff and the cross-claim of indemnity between Swindell and Webb.

Defendant Swindell-Dressler Co. (Swindell) had contracted with Ford for development of the casting plant. Swindell in turn had contracted with J. B. Webb Co. (Webb) for manufacture and installation of the conveyor system in question.

Plaintiff brought the present suit alleging negligence and breach of implied warranties of fitness against both defendants. The primary claims of liability concerned (1) the use of straight rather than tapered rollers in a 90-degree turn of the conveyor;[2] (2) the design of "popout" rollers at the point of the conveyor where plaintiff was injured;[3] and (3) the absence of a crossover or stile at plaintiff's job location.

Defendant Swindell's first claim on appeal is that it could not have been held liable on a theory of negligence where, as general contractor, it subcontracted the design, manufacture, and installation of the conveyor to defendant Webb and where the conveyor was built to Ford's specifications, was accepted by Ford, and subsequent to that acceptance Ford had altered the methods and procedures for use of the conveyor, which alterations led to plaintiff's accident.

We do not find any of these arguments persuasive. Swindell was not sued under a doctrine of *respondeat superior* based upon the alleged negligence of Webb, but rather was claimed to be a joint active tortfeasor with Webb. Although Swin-

---

[2] Plaintiff asserted that the use of straight rollers at the curve, instead of the tapered rollers in the original plans for the conveyor, caused the engine blocks to stack up at the curve. This in turn, according to plaintiff, made it foreseeable to defendants that an employee would have to be stationed at the curve to pull the blocks around the corner. Plaintiff was in fact working at the curve immediately prior to the accident, which occurred at the point where the curve began.

[3] Plaintiff claimed that a different type of "popout" roller (itself a safety device) would have significantly lessened his injuries.

dell claims only limited design responsibility for this conveyor system, the record is replete with testimony, including that of employees of Swindell, that both defendants were actively involved in negotiations with Ford concerning the design of the conveyor. Swindell cannot shift its potential liability onto the shoulders of Webb by reference to a theory of vicarious liability that did not exist at trial.

Defendant fares no better by arguing that Ford accepted the conveyor system without complaint or modification. The "accepted work" doctrine has been abolished in Michigan as a defense to an action based on the negligence of a contractor. *Wilhelm v The Detroit Edison Co,* 56 Mich App 116; 224 NW2d 289 (1974), *Kapalczynski v Globe Construction Co,* 19 Mich App 396; 172 NW2d 852 (1969).

Swindell's strongest argument in regard to its own liability is that Ford changed the manner in which the conveyor system was operated after the manufacture and installation had been completed. It was not disputed at trial that the original grid plans for this part of the factory, which designated where workers would be positioned, did not have a work station at the location where plaintiff was injured. Swindell contends, on appeal as at trial, that the safety precautions built into the conveyor system could not be expected to fully protect a worker whose location was unknown during the periods of design and installation.

Implicit in this argument defendant raises the threshold question of the lawsuit; *i.e.,* whether the danger of plaintiff's accident was reasonably foreseeable to defendants during the design phase of the construction process. In *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), the Michigan

Supreme Court discussed at length the elements of a negligence claim in relation to products liability actions:

"The elements of an action for negligence are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage.

" 'Duty' comprehends whether the defendant is under *any* obligation to the plaintiff to avoid negligent conduct; it does not include—where there is *an* obligation—the nature of the obligation: the general standard of care and the specific standard of care.

\* \* \*

"While the court decides questions of duty, general standard of care and proximate cause, the jury decides whether there is cause in fact and the specific standard of care: whether defendants' conduct in the particular case is below the general standard of care, including—unless the court is of the opinion that all reasonable persons would agree or there is an overriding legislatively or judicially declared public policy—whether in the particular case the risk of harm created by the defendants' conduct is or is not reasonable.

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. Proximate cause encompasses a number of distinct problems including the limits of liability for foreseeable consequences. In the *Palsgraf [v Long Island R Co,* 248 NY 339; 162 NE 99; 59 ALR 1253 (1928)] case, the New York Court of Appeals, combining the questions of duty and proximate cause, concluded that no duty is owed to an unforeseeable plaintiff.

"The questions of duty and proximate cause are interrelated because the question whether there is the requisite relationship, giving rise to a duty, and the question whether the cause is so significant and important to be regarded a proximate cause both depend in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the

victim, and whether the result of that conduct and intervening causes were foreseeable.

"It is well established that placing a product on the market creates the requisite relationship between a manufacturer, wholesaler and retailer and persons affected by use of the product giving rise to a legal obligation or duty to the persons so affected. A manufacturer owes the consumer an obligation to avoid negligent conduct. The obligation extends to persons within the foreseeable scope of the risk." (Footnotes omitted.) 400 Mich at 437, 438–439.

The controversy between the parties as to whether plaintiff was within the foreseeable scope of risk from the conveyor system falls under the *Moning* Court's definition of "duty". If plaintiff was foreseeable, a sufficient relationship was created, giving rise to the "legal obligation on the actor's part for the benefit of the injured person".

As the *Moning* Court further points out, the question of duty is generally decided by the trial court as a matter of law.[4] However, where the facts presented at trial are a matter of dispute, the jury has a function in the decision on whether a duty exists:

[4] "The existence of a duty. In other words, whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. It is no part of the province of a jury to decide whether a manufacturer of goods is under any obligation for the safety of the ultimate consumer, or whether the Long Island Railroad is required to protect Mrs. Palsgraf from fireworks explosions: A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant. A decision that, if certain facts are found to be true, a duty exists, leaves open the other questions now under consideration." (Footnotes omitted.) Prosser, Torts (4th ed), § 37, p 206.

"In any case where there might be reasonable differ-
ence of opinion *as to the foreseeability of a particular
risk,* the reasonableness of the defendant's conduct with
respect to it, or the normal character of an intervening
cause, the question is for the jury, subject of course to
suitable instructions from the court as to the legal
conclusion to be drawn as the issue is determined either
way." (Footnote omitted. Emphasis added.) Prosser,
Torts (4th ed), § 45, p 290.

See also *Farwell v Keaton,* 396 Mich 281; 240
NW2d 217 (1976), *Holloway v Martin Oil Service,
Inc,* 79 Mich App 475; 262 NW2d 858 (1977).

Applying these standards to the case at bar, we
find that the court correctly denied the motion for
directed verdict. Plaintiff presented evidence from
an expert witness that the change made in the
conveyor system from tapered to straight rollers
should have caused defendants to foresee that a
worker would eventually have to be stationed at
the curve to assist the engine blocks in negotiating
the turn. Other evidence was presented that pre-
liminary grid drawings are often incomplete or
subject to revision upon implementation of the
final plans. This evidence directly placed the issue
of foreseeability in dispute. Since the claim of
negligence was properly placed before the jury,
their decision on the factual issues is beyond the
scope of our review.

Defendant Swindell's second contention is that
plaintiff was contributorily negligent as a matter
of law. It was admitted at trial that plaintiff
voluntarily attempted to step over the conveyor,
knowing it to be operating. Swindell claims that
this act, in the face of a clear danger, precluded
any recovery on the basis of a defect in the ma-
chinery.

The general rule is that contributory negligence
is an issue of fact:

"The Supreme Court in *Funk v General Motors Corp,* 392 Mich 91, 113; 220 NW2d 641 (1974), stated:

" 'The question of contributory negligence is generally one of fact, not law.'

"*Bruman v Yellow Taxicab Co,* 220 Mich 41, 48; 189 NW 887 (1922), stated:

" 'Contributory negligence is essentially a question of fact in all cases except where by plaintiff's own testimony or the undisputed facts the case is too plain for reasonable, fair-minded men to draw different conclusions.'

"The rule is further summarized in 18 Callaghan's Michigan Civil Jurisprudence, Negligence, § 27, pp 257–258:

" 'The ordinary care which the plaintiff must exercise to be free from contributory negligence is such care as an ordinarily prudent person would exercise under the same or similar circumstances. It is said that no precise rules can be laid down by which all acts of contributory negligence can be measured, and each case must depend upon its own particular facts, and is usually a question of fact for the jury.' " *Jaworski v Great Scott Supermarkets,* 71 Mich App 235, 236–237; 247 NW2d 363 (1976).

Even where the danger was obvious, courts are reluctant to take the issue of the reasonableness of the injured person's actions away from the trier of fact. In *Byrnes v Economic Machinery Co,* 41 Mich App 192; 200 NW2d 104 (1972), the plaintiff was injured when a labeling machine manufactured by defendant was inadvertently switched on while he was in the process of making internal adjustments to the machine. Defendant argued that plaintiff himself was negligent in removing certain safety guards on the machine in order to make the adjustments. The *Byrnes* Court, reversing a grant of summary judgment in favor of defendant, held that since the safety guards by design had to be removed before necessary adjustments were made

plaintiff had proceeded reasonably in the face of a
known danger:

"It is true that plaintiff was aware of the risk and
that many cases find no duty where the danger is
obvious. This requirement must be considered in con-
junction with the modern tort concept that awareness
alone does not preclude negligence. * * * A danger may
be obvious but not appreciated. 1 Frumer & Friedman,
Products Liability, § 7.02, p 117. Even where a danger is
appreciated, circumstances may cause it to be momen-
tarily forgotten. It is also possible for the accident to
occur even though the injured party proceeds cautiously
in the face of an obvious danger.

"There is an analogous line of cases in Michigan
which hold that a finding of negligence is not precluded
when a plaintiff slips and falls in a place where the
danger is obvious but the plaintiff has proceeded with
caution in a place he has a right to be or must be.
*Pollack v Oak Office Building*, 7 Mich App 173 [151
NW2d 353] (1967); *Pigg v Bloom*, 22 Mich App 325 [177
NW2d 441] (1970). These cases recognize that where a
party either has no alternative or chooses an alterna-
tive which does not increase the risk, he should not be
precluded from placing liability on the party who has
created the risk. Such reasoning applies here.

"Where a person must work in a place of possible
danger, the care which he is bound to exercise for his
own safety may well be less, due to the necessity of
giving attention to his work, than is normally the case.
Plaintiff worked in a place of possible danger on a
machine controlled by another. He was aware of the
dangers, but had no alternative open to him which
would have lessened the risks. He proceeded with cau-
tion. Defendant should not be able to escape liability if
the risk to which plaintiff was exposed was unreasona-
ble and foreseeable by the defendant." (Citations omit-
ted.) *Byrnes, supra* at 202–203.

In the case at bar plaintiff was required to work
in close proximity to the dangers of a moving
conveyor. His employment required regular rota-

tion of work stations. Evidence was presented that stepping over the conveyor was the accepted method of effectuating this rotation, since plaintiff testified that he and other employees had previously stepped over the machine in the presence, and apparently with the tacit approval, of Ford supervisory personnel. In addition, evidence was presented to the effect that plaintiff was virtually "landlocked" at the work station, thereby eliminating most, if not all, alternative methods of rotation. Finally, plaintiff testified as to the manner in which he attempted to step over the conveyor, evidencing recognition of the danger and a conscious effort to minimize the risk.

Given these facts we cannot say that reasonable minds could not differ on the issue of whether plaintiff proceeded reasonably in the face of an obvious peril, particularly when he was required to rotate work stations. *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973). We see no reason to exempt this case from the general rule that contributory negligence is a matter for the trier of fact.[5] The trial court correctly denied defendant's motions, both during and after trial, for a directed verdict on the grounds of contributory negligence.

Defendant finally contends that the trial court erred in failing to give its requested instruction that a manufacturer of machinery is under no duty to provide an accident proof or foolproof

---

[5] The cases cited by defendant in support of its argument are distinguishable from the present situation. In *Modzel v Norwalk Truck Lines,* 325 Mich 693; 39 NW2d 226 (1949), plaintiff voluntarily returned to a place of danger, in a clearly unreasonable manner, after his regular hours of employment. In *Shephard v Short,* 53 Mich App 9; 218 NW2d 416 (1974), and *Kubasinski v Johnson,* 46 Mich App 287; 208 NW2d 74 (1973), the holdings affirming directed verdicts were premised on the dual factors of plaintiffs' violations of statutes (negligence per se) and a lack of evidence showing negligence of the defendants. Neither situation exists in the case at bar.

machine. See *Casey v Gifford Wood Co,* 61 Mich
App 208; 232 NW2d 360 (1975). It is true that the
*Casey* Court stated that such an instruction should
be given when requested in a products liability
suit. *Casey, supra* at 218. While the court was in
error in failing to give the requested instruction,
we do not find that the error is sufficiently prejudi-
cial to necessitate the granting of a new trial. This
case involved many complex issues and was vigor-
ously contested by all parties. There was no claim
made that defendant was obligated to provide a
foolproof conveyor, but only one that reasonably
protected foreseeable employees. We do not think
that the court's failure to give this instruction, in
light of the unobjected-to instructions on negli-
gence and warranties, is inconsistent with substan-
tial justice. GCR 1963, 529.1.

The last issue that we must discuss involves
Swindell's cross-claim of indemnity against Webb.
The contract between the defendants contained
the following provision:

"14. INJURY TO PERSONS AND DAMAGE TO
PROPERTY: Subcontractor shall indemnify and save
Contractor and Owner, or either, harmless from all
claims for injuries to, or death of, any and all persons,
and for loss of or damage to property arising under or
by reason of this subcontract, except claims resulting
from the sole negligence or wilful acts or omissions of
the Contractor, its employees, or its subcontractors,
agents, or representatives. Notwithstanding the forego-
ing, Subcontractor shall utilize at its own risk materi-
als, tools, equipment or facilities furnished by Contrac-
tor for use by the Subcontractor and not to be incorpo-
rated in the work and Subcontractor shall indemnify
and save Contractor and Owner, or either, harmless
from all claims for injuries to, or death of, any and all
persons, and for loss of and damage to property result-
ing from or by reason of the Subcontractor's utilization
thereof whether or not caused partially or totally by

the negligence of Contractor, its employees, subcontractors, agents or representatives."

Both defendants raised cross-claims for indemnity. The court instructed the jury as to the indemnity claims stating:

"All right. Now, you've heard me talk about indemnity. You have the matter of negligence to decide, the matter of express warranty to decide, the claim of implied warranty to decide, and there is a cross-claim between Swindell-Dressler and J. B. Webb Company for indemnity. So, I'll read to you an instruction on that.

"I instruct you that it is the general rule that whenever the wrongful act of one person results in liability being imposed on another person, the latter person may have indemnity from the person actually guilty of the wrong.

"I instruct you, if the conveyor system manufactured by the J. B. Webb Company was defective and not reasonably fit for the purpose intended, and that such defect was the result of the sole negligence of Swindell-Dressler, J. B. Webb Company is entitled to indemnity from Swindell-Dressler.

"I instruct you that *if the defect is the result of the negligence of both parties, Swindell-Dressler and Webb, Swindell-Dressler is entitled to indemnity from J. B. Webb Company.*" (Emphasis added.)

The judge then instructed on the form of the jury's verdict:

"In regard to—if your verdict is for the plaintiff against both defendants, you may not divide the damages between them, but you shall return a verdict in one single sum against both defendants whom you find to be liable. That's where you start out from, I might say, because you have to consider also the matter of indemnity, which is taken into account in your verdict. Of course, your verdict may be for one defendant and not for the other defendant. One way or the other.

\*   \*   \*

"When you arrive back in the courtroom I shall call upon your foreman to announce your verdict. If your verdict is for the plaintiff, he will say, 'We find for the plaintiff, in "x" amount of dollars against one defendant or the other.' If your verdict is for defendant, he will say, 'No Cause for Action.' Do you understand that?

"I'll repeat it again for you: If your verdict is for Mr. Robertson, the foreman will say, 'We find for the plaintiff in "x" amount of dollars,' against one defendant or both defendants, as you choose. If your verdict is for the defendant, or one defendant, the foreman will say, 'We find no cause of action as to both defendants,' or, 'as to one defendant.' "

There were no objections raised to either of these instructions.

After the jury had deliberated for a period of time, they requested further instructions on the form of the verdict. The judge again instructed them to phrase the verdict as "we find for plaintiff in 'x' dollars" against one or both defendants, or "we find no cause of action". Again there was no objection to the instructions.

Shortly thereafter the jury returned and rendered its verdict:

"FOREMAN: Your Honor, we find both defendants guilty, pay the plaintiff the sum of $931,000.00.

"THE COURT: I see. I think that needs a little bit of inquiry, because I said to you in regard to your verdict, if you find for the plaintiff in 'x' amount of dollars, and I take it you find for him in the amount of $931,000.00, and you find against both Swindell-Dressler and J. B. Webb Company, and I suppose that takes into account that there was a cross-claim for indemnity on the part of Swindell-Dressler against Webb and a claim for indemnity on the cross-claim on the part of J. B. Webb Company against Swindell.

"Did you take that into account?
"FOREMAN: We did, your Honor."

After the jury was polled, counsel for defendant Swindell requested that the jury be questioned as to what their verdict of "guilty" entailed. The jury was removed to the juryroom, and then returned to state that "guilty" meant negligence on the part of both defendants.

After the jury was excused, counsel for Swindell asked if a judgment would now be entered granting indemnity in favor of Swindell:

"MR. TONKIN: I think the court enters a judgment at this point on indemnity.

"THE COURT: Perhaps so, but I'd like to have some more discussion about that point and as it stands now, as I instructed them, if they found that Swindell-Dressler was solely negligent, their verdict would be strictly against Swindell-Dressler; on the other hand, if they felt as though there was indemnity, that Swindell was not solely negligent, then the verdict would be against Webb.

"MR. TONKIN: Yeah—you said if they were both negligent, then Swindell was entitled to indemnity.

"MR. STANCZYK: Well, I considered the entire matter—I don't think that the judge can change the form of the verdict of the jury.

"MR. TONKIN: I think so. There's plenty of authority,—

"THE COURT: I think we'll talk about it later on. At the present time, why, Mr. Bohall will be presenting a judgment, and at the time of the entry of the judgment, why, we'll take that up."

Swindell raised the indemnity issue in its post-trial motion for a new trial or judgment notwithstanding the verdict. The trial court, without explanation, refused to grant any indemnity.

The claim of indemnity presents us with two distinct sub-issues. The first is whether the indemnity clause is valid and applicable to the present lawsuit. Second, assuming the provision applies, what are the implications of the jury's verdict of joint negligence.

In considering the validity and applicability of the indemnity clause, we note first that Webb has not properly preserved this issue for appeal. There was no objection made to the jury instructions on indemnity. Nevertheless, we will treat the issue as if there had been an objection in order to resolve any doubts as to the basis for our eventual decision.

Webb raises two questions relating to the validity and applicability of the clause. It is argued that the entire clause is invalid because the second sentence seeks to indemnify Swindell for its sole negligence, contrary to statute,[6] and that, even if valid, the clause was intended to apply only to accidents arising during the course of construction of the conveyor system. We will respond to these claims in order.

By statute, an indemnity provision in a construction contract which seeks to protect the promisee from liability for personal or property damage arising from the sole negligence of the promisee is void as against public policy. MCLA 691.991; MSA 26.1146(1). Reviewing the instant contractual provision, we find the second sentence in clear violation of the statute. However, the second sentence of the clause relates, by its own language, only to accidents arising from Webb's use of tools or materials supplied by Swindell. Factually, the present lawsuit is not covered under the scope of this specific wording. The first sentence, purporting to

---

[6] MCLA 691.991; MSA 26.1146(1).

establish a general right of indemnity for all liability arising under or by reason of the contract, specifically excludes the situation of Swindell's sole negligence, thereby comporting fully with the expressed public policy of the statute.

The fact that both sentences were combined in a single clause requires us to consider the question of severability. Webb argues that the clause must be read as a whole, and thus found totally void. Swindell naturally argues the factual inapplicability of the second sentence and seeks severance.

We find Swindell's arguments persuasive. The second sentence of the clause was intended to govern only a limited and definite species of lawsuits, of which the present matter is not a member. A general rule of contract law is that a void section of an otherwise valid provision can be severed if it is not an essential part of the whole. 2 Restatement, Contracts, § 607; *Kukla v Perry,* 361 Mich 311; 105 NW2d 176 (1960). We do not find the second sentence here to be an essential part of the general right of indemnity. We can sever the specific right of indemnity set forth in that sentence without doing violence to the general, and enforceable, scope of the provision.[7]

Having found the right of indemnity enforceable in the case at bar, the issue remains as to whether it is applicable. Webb contends that the whole provision applies only to construction accidents. Again, we must employ a form of severability analysis. Clearly the second sentence relates to claims arising from the construction by Webb of

---

[7] This result leaves the parties in a type of "fall-back" position. The first sentence, which applies to "all" claims arising out of the contract, must also apply to cases that were meant to be covered by the more specific language of the second sentence. Now that the second sentence is voided, the right of indemnity in effect for those cases falls back into the general right expressed in the remaining sentence of the clause.

the conveyor system. There is no such limiting language in the first sentence. We agree with Webb's assertion in its brief that indemnity clauses are to be strictly construed, and all ambiguities resolved against the drafter (here being Swindell). *Fireman's Fund American Insurance Co v General Electric Co,* 74 Mich App 318; 253 NW2d 748 (1977), *Meadows v Depco Equipment Co,* 4 Mich App 370; 144 NW2d 844 (1966). We do not agree that the scope of the sentence is ambiguous. The indemnity applies to "all" claims where not caused by Swindell's sole negligence, not merely to construction accidents. The scope of the second sentence does not control the entire clause.

In this situation, which presents experienced corporate parties having dealt at arms-length concerning a substantial contract, we find that the intent of the parties was to contract for general indemnity not limited to construction injuries. *Fireman's Fund, supra.* The first sentence of the provision is thus legally enforceable and factually applicable to the case at bar.

The last question to be answered is whether the court erred in refusing to issue an order granting indemnity to Swindell, given the verdict of the jury. We have carefully read the transcript of the confusing circumstances surrounding the verdict, and conclude that indemnity should be awarded to Swindell.

This conclusion rests on a number of factual considerations. The court, absent objection, instructed the jury that Swindell was *entitled* to indemnification if joint negligence was found. The court gave the jury repeated instructions on the form of their verdict, but not once instructed them to make a specific finding on the indemnity claims as part of that verdict. The jury returned a verdict

of joint negligence in a form consistent with the judge's instructions. When asked if they had considered the indemnity claims when they reached their verdict, the jury merely stated that they had considered them. We admit that this response was somewhat vague, but our review of the totality of the circumstances convinces us that the jury was indicating that they had reached a verdict of joint negligence with full awareness that such a verdict would result, as per the instructions, in an order of indemnity in favor of Swindell.[8]

The verdict in favor of plaintiff is affirmed. The matter is remanded to the trial court for entry of an order granting indemnity from defendant Webb to defendant Swindell.[9] Costs to plaintiff from defendant Swindell, and to Swindell from defendant Webb on the cross-appeal.

[8] The jury was never instructed to decide whether the indemnity provision of the contract was applicable to this lawsuit. They were merely told, in the form of a rule of law, that a certain occurrence (indemnity) would result from a certain verdict (joint negligence). To accept Webb's contention that the jury was indicating that they had considered the indemnity claim and rejected it would be in effect allowing the jury to disregard its instructions and render a verdict upon an alternative which was not open to them. We cannot countenance such a result.

[9] Because of our decision on the indemnity claim, we need not consider Webb's extensively-briefed argument in support of adoption of the tort theory of apportionment of damages.