# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MICHAEL KOCH.

Estate of Michael Koch, by SUSAN KOCH, Personal Representative,

     Plaintiff

v

A. Z. SHMINA, INC,

     Defendant/Cross-Defendant-Appellee/Cross-Appellant,

and

ORCHARD, HILTZ, & MCCLIMENT, INC.

     Defendant/Cross-Plaintiff/Third-Party Plaintiff-Appellant/Cross-Appellee,

and

REGAL RIGGING & DEMOLITION, LLC

     Defendant,

and

PLATINUM MECHANICAL, INC.

     Third-Party Defendant-Appellee.

FOR PUBLICATION
December 19, 2017
9:00 a.m.

No. 332583
Washtenaw Circuit Court
LC No. 13-001066-NO

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J.

-1-

Defendant/Cross-Plaintiff/Third-Party Plaintiff, Orchard Hiltz & McCliment, Inc. (OHM), appeals by right the trial court's order dismissing this case, which plaintiff, the Estate of Michael Koch, filed after its decedent was killed in an explosion at the Village of Dexter's (Dexter) Wastewater Treatment Plant. OHM was Dexter's engineer. OHM filed a cross-complaint seeking indemnity from contractor A. Z. Shmina, Inc. (Shmina) and subcontractor Platinum Mechanical, Inc. (Platinum). The parties stipulated to dismiss the case after the trial court denied OHM's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and granted summary disposition in favor of Shmina and Platinum under MCR 2.116(C)(10) on OHM's claims. We affirm with respect to the trial court's denial of summary disposition in favor of OHM. We vacate the trial court's grant of summary disposition in favor of Shmina and Platinum and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

OHM initially contracted with Dexter in August 2011 to design upgrades to the sludge handling process at Dexter's wastewater treatment plant. The services included replacing digester tank lids that had exceeded their design life. On June 4, 2012, OHM again contracted with Dexter for services including "contract administration, construction engineering, construction observation, and construction staking." OHM's contract incorporated a provision to the effect that it had no responsibility for job-site safety.

Dexter hired Shmina as a contractor to improve the digester and sludge storage tanks. Dexter's contract with Shmina included general and supplementary terms, both of which contained indemnification provisions. Shmina subcontracted with Platinum, which agreed to provide labor and materials for digester lid demolition and installation. Platinum's contract incorporated the general, special, and supplementary terms of Shmina's contract with Dexter. Platinum in turn subcontracted with Regal Rigging & Demolition (Regal), awarding Regal a contract to demolish, remove, and haul away two digester tank lids.

According to Jeremy Cook, Platinum's job foreman, there were weekly progress meetings in OHM's job trailer. Cook stated that Chris Nastally of OHM discussed "anything that had to do with that job" at the meetings, including job safety. Meeting minutes indicate that a progress meeting was held on April 11, 2013, and that Nastally and Sherry Wright of OHM, Cook and Kenneth Coon of Platinum, John Franklin of Shmina, and Jeff LaFave of Regal were in attendance. The minutes indicated that Regal planned to start demolishing the digester lids on April 12 and that the primary lid would be removed first. The minutes also indicated that the only "hot" work would be to cut holes in the lids and pull them out. Coon testified that at the meeting, Regal was instructed that it could only cut holes in the primary digester for rigging purposes and "[t]here was to be no other cutting on that job site whatsoever." Coon stated that anyone on the job site should have known that there should be no cutting torches on the secondary digester.

On April 22, 2013, the secondary digester exploded, resulting in Koch's death. Wright, an environmental engineer, testified that she was on the site the week before the explosion because Nastally was on vacation. Wright testified that on the morning of the explosion, she

walked the site with Nastally, talked about the areas that had been worked on, and told Nastally that the secondary digester still contained sludge.

Franklin, Shmina's project supervisor and site safety officer, testified that the primary digester had been cleaned and purged. Franklin also testified that OHM, Platinum, and Nastally would have known that only one digester could be worked on at a time. According to Franklin, David McBride of Regal began cutting the side beams on the secondary digester tank at around 10:00 or 10:30 a.m., and Franklin was concerned about the methane in the digester.

Cook testified that Franklin approached him at around 10:00 a.m. and told him that "the guys from Regal [were] doing some hot work and he was worried that they were blowing sparks on the roof . . . ." Cook stated that he approached McBride, told him that he was not supposed to be working on the secondary digester, and specifically mentioned that there could be methane gas. Cook testified that McBride was given plywood to lean against the tank to finish cutting the rail he was working on, which otherwise would have created a falling hazard.

Cook testified that he did not see McBride cutting again that day. However, Franklin testified that he saw McBride again cutting at around 1:00 or 1:30 p.m. on the roof line. According to Franklin, he went onto the roof and told McBride to stop working and that it was dangerous to work there. Franklin stated that McBride shut off his cutting torch and walked over to the primary digester, at which point Franklin left to have a conversation with Cook. McBride testified that Cook told him to use a torch to remove the bolts and that if someone had told him to stop cutting or to cut in a different location, he would have moved.

Nastally testified that he was on the roof for about four minutes before the explosion. Nastally stated that if he was looking at someone who was cutting, he would have known they were cutting, but he was not paying attention to whether there were sparks. When asked whether he knew that the tanks contained methane gas when they had sludge in them, Nastally testified, "I guess I never thought about that." Nastally also testified that it was not his responsibility to know whether there was methane gas or to make sure the digesters did not explode. Nastally testified that he took a couple of pictures and then responded to an e-mail on his phone, which he was looking down at when the explosion occurred.

McBride testified that in one of the photographs Nastally had taken, he can be seen cutting the center bolts of the digester, that he had cut about thirty bolts, and that it took him about five minutes to cut each bolt. McBride testified that when he is cutting, he creates sparks, smoke, a loud noise, and a burnt metal smell. Wright testified that if she had taken the photograph, she would have been concerned for the safety of everyone in the area, and that anyone onsite should have informed Franklin about McBride's activities.

The Estate sued Shmina and OHM,[1] alleging in pertinent part that Dexter had warned Shmina and OHM not to work on any digester until it was emptied and cleaned to reduce

---

[1] The Estate did not name Platinum as a defendant because the Worker's Compensation Disability Act was the Estate's only remedy against Platinum, who was Koch's employer.

methane hazards, the secondary digester had not been emptied, Shmina and OHM knew the secondary digester still contained sludge, and that McBride was photographed cutting bolts on the secondary digester within minutes of the explosion. The Estate alleged that McBride's cutting torch ignited methane in the secondary digester, which launched the lid into the air and caused Koch's death.

OHM filed a cross-claim against Shmina, alleging in pertinent part that Shmina had breached its contract with OHM by refusing to indemnify and defend OHM against the Estate's complaint and by failing to purchase project insurance that would have protected OHM from claims against it. OHM also filed a third-party complaint against Platinum, in which OHM made the same allegations.

OHM moved for summary disposition under MCR 2.116(C)(10) against Platinum and Shmina, alleging that OHM was an intended third-party beneficiary of Platinum's and Shmina's contracts with Dexter and that Platinum and Shmina were required to indemnify, defend, and hold harmless OHM. Platinum responded in part that the contract's general and supplemental provisions conflicted, creating an ambiguous agreement that the trial court should construe against OHM. Shmina responded that OHM could not reasonably observe practices that its engineers knew to be dangerous and do nothing. OHM replied that the parties' contracts required them to defend and indemnify OHM regardless of the cause of the accident and that the contracts' general and supplemental provisions did not conflict.

At an April 22, 2015 motion hearing, the trial court asked counsel if they were familiar with MCL 691.991, also known as the indemnity invalidating act (the act), which no party had cited. The trial court then read the statute. OHM argued that it was not a public entity under the statute. The trial court ultimately denied OHM's motion for summary disposition, ruling that MCL 691.991 was clear and prohibited OHM from seeking indemnification for its own negligence. The trial court subsequently denied OHM's motion for reconsideration, and reaffirmed its determination that MCL 691.991 applied retroactively. The court also stated, as an alternate basis for its denial of summary disposition to OHM, that the internally inconsistent nature of the indemnification clauses at issue created an ambiguity, and it accepted Shmina's position that an express indemnity contract should be construed strictly against the drafter.

Platinum and Shmina subsequently filed motions for summary disposition under MCR 2.116(C)(10), alleging that the indemnification agreements were void or precluded by MCL 691.991. Shmina argued that any indemnification would be based on OHM's own negligence. In response, OHM argued that it was not responsible to supervise or control construction, that the statute did not apply to contracts between private entities, and that it allowed indemnification as long as no party was held liable for more than its proportionate share of fault.

The trial court summarized the question as whether MCL 691.991 eliminated or limited indemnity provisions in public contracts. The trial court granted summary disposition in favor of Platinum and Shmina on the basis that MCL 691.991 precluded indemnity and the parties' contractual provisions were therefore void and could not be severed because they provided more indemnification than the statute allowed. The parties then settled their claims with the Estate and filed a stipulated order to dismiss the case.

After oral argument, this Court, on its own motion, ordered the parties to file supplemental briefs on the issue of the retroactive application of MCL 691.991(2).[2] As we find that the resolution of that issue disposes of the case before us, we address that issue first.

## II. RETROACTIVITY OF MCL 691.991(2)

We hold that MCL 691.991(2) is subject to prospective application only, and that the trial court therefore erred by granting summary disposition in favor of Platinum and Shmina regarding their liability to OHM for indemnification. This Court reviews de novo issues of statutory interpretation, *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014), and a court's decision on a motion for summary disposition, *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The trial court must consider all the documentary evidence in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013).

When interpreting a statute, this Court's goal is to give effect to the intent of the Legislature. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009). The language of the statute itself is the primary indicator of the Legislature's intent. *Id*. If the statutory language is unambiguous, this Court must enforce the statute as written. *Id*. We read and understand statutory language in its grammatical context unless the language indicates a contrary intention. *Id*.

"An indemnity contract creates a direct, primary liability between the indemnitor and the indemnitee that is original and independent of any other obligation." *Miller-Davis*, 495 Mich at 173. Parties have broad discretion to negotiate such contracts. *Id*. However, MCL 691.991(2) provides in pertinent part that in any contract for the maintenance or demolition of infrastructure, a public entity shall not require a contractor to indemnify the public entity for any amount greater than that contractor's degree of fault:

> When entering into a contract with a Michigan-licensed . . . professional engineer . . . for the design of a building, . . . or other infrastructure, . . . or a contract with a contractor for the construction, alteration, repair, or maintenance of any such improvement, including moving, demolition, and excavating connected therewith, a public entity shall not require the . . . professional engineer . . . or the contractor to defend the public entity or any other party from claims, or to assume any liability or indemnify the public entity or any other party for any amount greater than the degree of fault of the . . . professional engineer . . . or the contractor and that of his or her respective subconsultants or

---

[2] *Estate of Koch v A Z Shmina, Inc*, unpublished order of the Court of Appeals, issued July 14, 2017 (Docket No. 332583).

subcontractors. A contract provision executed in violation of this section is against public policy and is void and unenforceable.

We agree that the application of MCL 691.991(2) would compel the result reached by the trial court. But in this case, the parties entered into and executed their respective contracts in 2011 and 2012.[3] MCL 691.991(2) became effective on March 1, 2013, and the digester exploded on April 22, 2013. Accordingly, the contracts pertinent to this dispute were entered into before the effective date of the statute.

The question therefore becomes whether MCL 691.991(2) may be applied retroactively. Statutes are presumed to operate prospectively unless "the contrary intent [of the Legislature] is clearly manifested." See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). This is especially true if retroactive application of a statute would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions. See *id*. at 583, 588 (holding that a statute concerning sales commission payments could not be applied retroactively because it would substantially alter the nature of agreements entered into before the act).

This Court has held that a pre-2013 version of the indemnity invalidating act should be given retroactive effect, at least when the negligent act occurred after the effective date of the act. See *Brda v Chrysler Corp*, 50 Mich App 332, 335-336; 213 NW2d 295 (1973); compare *Blazic v FMC*, 15 Mich App 377; 166 NW2d 636 (1968) (act did not apply when negligent act occurred before the effective date). Indeed, it was *Brda* on which the trial court relied in this case in finding MCL 691.991(2) to be retroactively applicable. However, the act, before its 2013 amendment, did not contain any of the language now found in MCL 661.991(2). Rather, the entirety of the pre-2013 act read:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable. [MCL 691.991 (prior to amendment by 2012 PA 468 (effective date March 1, 2013).]

This language closely mirrors the post-amendment language of MCL 691.991(1):

> In a contract for the design, construction, alteration, repair, or maintenance of a building, a structure, an appurtenance, an appliance, a highway, road, bridge, water line, sewer line, or other infrastructure, or any other improvement to real

---

[3] Platinum subcontracted with Regal on April 17, 2013, but that contract is not pertinent to the issues before us.

property, including moving, demolition, and excavating connected therewith, a provision purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable.

Both the pre-2013 act and subsection (1) of the current act concern themselves with prohibiting a general contractor from requiring its subcontractors to indemnify it for its sole negligence. See *Miller-Davis*, 495 Mich at 173; *Robertson v Swindell-Dressier Co*, 82 Mich App 382, 389; 267 NW2d 131 (1978). By contrast, subsection (2), which took effect in 2013, concerns itself with the issue at hand, which is the extent to which a public entity may require a general contractor or subcontractor to indemnify it. And subsection (2) uses substantially different language than the pre-amendment statute and the current subsection (1). MCL 691.991(1) refers to sole negligence indemnification clauses in contracts in an essentially timeless manner—if a contract exists with a sole negligence indemnification provision, that provision is void and unenforceable. By contrast, MCL 691.991(2) speaks to contract *formation* in three places: it provides that "when entering into a contract," a public entity "shall not require" a general contractor or subcontractor to indemnify it beyond that entity's degree of fault. And "a contract *executed* in violation of this section is against public policy and is void and unenforceable."[4] (Emphasis added).

The Legislature's use of different terms suggests different meanings. *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 14; 795 NW2d 101 (2009). Further, our Supreme Court has discussed "two signals" that indicate the Legislature's intent that a statute be applied prospectively: the first is that the "Legislature included no express language regarding retroactivity," and the second is that the statute imposes liability for failing to comply with its provisions. *Frank W Lynch*, 463 Mich at 583-584. The Legislature is presumed to know how to make clear, through express language, its intention that a statute operate retroactively. See *id*. at 584 (citations omitted). And it is impossible for a party to "comply" with a statute's provision or provisions before that statute's existence. *Id*.

Both of those signals are present here. MCL 691.991(2) contains no express language concerning retroactivity. In fact, the 2013 amendment specified that "this amendatory act takes effect March 1, 2013." 2012 PA 468. And MCL 691.991(2) states that "[a] contract provision *executed in violation of this section* is against public policy and is void and unenforceable." Before March 1, 2013, subsection (2) was not effective and contracts could not be "executed in violation" of it. See *Frank W Lynch*, 463 Mich at 584 ("Further indicating that the Legislature intended prospective application of the SRCA is the fact that subsection 5 of the SRCA provides

---

[4] A contract is generally executed (i.e., brought into its final, legally enforceable form) by signing and delivering it. See *Black's Law Dictionary* (10th ed). The contracts at issue provided that they were effective on the date the last party signed and delivered them, if another date was not specified. All relevant signature dates and specified effective dates for the contracts and amendments at issue were in 2012.

for liability if the principal 'fails to comply with this section.' Because the SRCA did not exist at the time that the instant dispute arose, it would have been impossible for defendants to 'comply' with its provisions. Accordingly, this language supports a conclusion that the Legislature intended that the SRCA operate prospectively only.").

We conclude that the language of the act does not clearly manifest the Legislature's intent that it be applied retroactively to contracts entered into and executed before its effective date. *Frank W Lynch*, 463 Mich at 583. The trial court therefore erred by applying MCL 691.991(2) to the claims before it. Accordingly, we vacate the trial court's grant of summary disposition in favor of Shmina and Platinum on the ground that MCL 691.991(2) rendered void and unenforceable the indemnification provisions at issue, and remand for reinstatement of OHM's indemnity claims.

## III. CONTRACTUAL AMBIGUITY

Shmina argues that the trial court's determination that the contracts were ambiguous provides an alternative basis for granting summary disposition in its favor. More specifically, Shmina contends that the contractual ambiguity must be construed against OHM as the drafter of the contracts, and that, therefore, this Court should hold that the broader indemnification provision of the supplemental conditions may not be enforced by OHM. OHM argues that the contractual provisions are not ambiguous because they are complementary.

We agree with the trial court that the contractual indemnification provisions are ambiguous, and for that reason we affirm the trial court's denial of summary disposition in favor of OHM. However, the trial court did not rely on the contractual ambiguity as a basis for granting summary disposition in favor of Shmina or Platinum, and we decline to do so in the first instance. Rather, we conclude that the ambiguity presents a genuine issue of material fact requiring a remand to the trial court.

This Court reviews de novo the proper interpretation of a contract, *Miller-Davis*, 495 Mich at 172, and the legal effect of a contractual clause, *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 369; 666 NW2d 251 (2003). If a contract's language is unambiguous, we interpret the contract as a matter of law. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). A contract is ambiguous when its provisions irreconcilably conflict. *Id*. A court may not ignore provisions of a contract in order to avoid finding an ambiguity. *Id*. Generally, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Id*. at 469.

Dexter's contract with Shmina provided that it expressly incorporated general conditions, supplemental conditions, insurance requirements, specifications, and drawings. Platinum's contract with Dexter included its own contractual provisions as well as an incorporation of Shmina's contract with Dexter. When a contract incorporates a writing by reference, it becomes part of the contract and courts must construe the two documents as a whole. *Whittlesey*, 217 Mich at 627.

The general conditions provided in pertinent part as follows:

> To the fullest extent permitted by Laws and Regulations, Contractor shall indemnify and hold harmless Owner and Engineer . . . *against all claims, costs, losses, and damages* . . . arising out of or relating to the performance of the Work . . . *but only to the extent caused by any negligent act or omission of the Contractor, any Subcontractor* . . . or any individual or entity directly or indirectly employed by any of them . . . . [Article 6.20(A) (emphasis added).]

General conditions Article 6.20(C)(2) also provided that "[t]he indemnification obligations of the Contractor under Paragraph 6.20.A shall not extend to the liability of the Engineer . . . arising out of . . . giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage."

The supplemental conditions "amend[ed] or supplement[ed] the Standard General Conditions of the Construction Contract . . . as indicated below. *All provisions which are not so amended or supplemented remain in full force and effect.*" The supplemental conditions deleted Articles 5.04 to 5.10 from the general conditions and added to Article 5 language that "[t]he Insurance Specifications 00 80 00, of this Contract, following the Supplementary Conditions, shall be added to Article 5 of the General Conditions, regarding insurance requirements." The insurance specifications, provided as part of the supplemental conditions, required Shmina indemnify OHM as follows:

> The CONTRACTOR agrees to indemnify, defend, and hold harmless the OWNER and ENGINEER, their consultants, agents, and employees, from and *against all loss or expense* (including costs and attorney's fees), by reason of all liability imposed by law upon the OWNER and ENGINEER, their consultants, agents, and employees for all damages . . . of bodily injury, including death at any time, resulting from, arising out of or in consequence of the performance of this work, *whether such injuries to persons or damage to property is due, or claimed to be due, to the negligence of the CONTRACTOR, his subcontractors, the OWNER, the ENGINEER, and their consultants, agents, and employees*, except only such injury or damage as shall have been occasioned by the sole negligence of the OWNER, the ENGINEER, and their agents and/or consultants. [Section 00 80 00 (formatting omitted).]

Because the supplemental conditions did not modify Article 6.20, that provision remained in full force and effect.

These provisions irreconcilably conflict because it is not possible for Shmina or Platinum to both indemnify OHM for (1) *all* damages, *regardless* of who caused them, under Section 00 80 00, and (2) *some* of the damages, *only if* Shmina or Platinum or its subcontractors caused them, under Article 6.20. Therefore, the trial court did not err by holding that these provisions in Shmina's and Platinum's contracts are ambiguous.

But the trial court did not grant summary disposition in favor of Shmina or Platinum on this basis. The trial court only relied on the contractual ambiguity as an alternative basis for denying OHM's motion for summary disposition. And we conclude that, because of the

contractual ambiguity, it was appropriate for the trial court to decline to grant summary disposition in favor of OHM.

However, it would have been inappropriate, absent consideration of relevant extrinsic evidence and other means and rules of contract interpretation, for the trial court to have relied on the contractual ambiguity as a basis for granting summary disposition in favor of Shmina or Platinum, and the trial court did not in fact do so. Generally, "the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp*, 468 Mich at 469. The relevance, if any, of the rule of contra proferentem that Shmina asks us to employ, is generally for the jury, not the trial court (or this Court), to consider, and then only in certain circumstances. See *id.*, 468 Mich at 471 ("In interpreting a contract whose language is ambiguous, *the jury* should also consider that ambiguities are to be construed against the drafter of the contract. This is known as the rule of contra proferentem. And this rule is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean. . . . If the language of a contract is ambiguous, and the jury remains unable to determine what the parties intended after considering all relevant extrinsic evidence, the jury should only then find in favor of the nondrafter of the contract pursuant to the rule of contra proferentem. In other words, if a contract is ambiguous regarding whether a term means 'a' or 'b,' but relevant extrinsic evidence leads the jury to conclude that the parties intended the term to mean 'b,' then the term should be interpreted to mean 'b,' even though construing the document in the nondrafter's favor pursuant to an application of the rule of contra proferentem would produce an interpretation of the term as 'a.' ") (citation omitted) (emphasis added). Particularly given that the trial court did not grant summary disposition in favor of Shmina or Platinum on this basis, and did not articulate any consideration of relevant extrinsic evidence or other means and rules of contract interpretation, we decline to apply the contra proferentem canon of construction in the first instance at this juncture of the proceedings.

IV. UNRESOLVED CLAIMS

Finally, OHM argues that the trial court improperly failed to resolve its cross-claims that Shmina and Platinum breached their contracts by failing to purchase sufficient project liability insurance. We conclude that OHM has waived this issue by stipulating to dismiss the case.

"A stipulation is an agreement, admission or concession made by the parties in a legal action with regard to a matter related to the case." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61. A stipulation is construed in the same manner as a contract. *Bd of Co Rd Comm'rs for Eaton Co v Schultz*, 205 Mich App 371, 379; 521 NW2d 847 (1994). When a stipulation is unambiguous, a court will enforce it as written. *Id*. at 380. A waiver is a "voluntary and intentional abandonment of a known right." *Quality Prods*, 469 Mich at 374. A party may not appeal an error that the party created. *Clohset v No Name Corp*, 302 Mich App 550, 555; 840 NW2d 375 (2013).

In this case, the parties filed a stipulated order to dismiss the case. The order stated that it "resolve[d] the last pending claim and close[d] the case." By signing this stipulation, OHM agreed that there were no additional claims that the trial court should address. We will not allow

OHM to appeal an error that OHM itself helped create and conclude that OHM has waived this issue by stipulating to dismiss the case.

Affirmed with respect to the trial court's denial of summary disposition in favor of OHM. Vacated with respect to the trial court's grant of summary disposition in favor of Shmina and Platinum. Remanded for reinstatement of OHM's claims for indemnification and further proceedings consistent with this opinion. Because the principal issue in this case came before this Court after the trial court raised the application of MCL 691.991(2) sua sponte, and after this Court ordered supplemental briefing on the issue on its own motion, and because the issue is of public importance, each party shall bear its own costs. MCR 7.219(A)(1). We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Amy Ronayne Krause