*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH MARIE MARKIEWICZ,

        Plaintiff-Appellant,

v

DAVID RANDAL MARKIEWICZ,

        Defendant-Appellee.

UNPUBLISHED
December 7, 2023

No. 363720
Macomb Circuit Court
LC No. 2019-003236-DM

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

RIORDAN, J. (*dissenting*).

I respectfully dissent. For the reasons set forth, I would reverse and remand to the trial court for entry of an order awarding the embryo at issue to plaintiff.

This Court previously ruled that "the trial court should first consider whether the disposition of the embryo is governed by a valid contract between the parties. If such a contract exists, the matter should be concluded in accord with the contractual terms that the parties agreed upon in that contract." *Markiewicz v Markiewicz*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2022 (Docket No. 355774), p 10. This, the trial court failed to do. The parties' contract with the storage facility provided, in relevant part:

> I/we agree to elect to cryopreserve all viable embryo(s) not transferred that are created during an IVF cycle. The process of cryopreservation will be performed in the laboratory of Michigan Center IVF, PLLC. The cryopreserved embryo(s) will be transferred to the long term facility of Fertility Storage, Inc (FSI)[.] *It is my/our intention to have these embryos transferred back to my uterus in a later cycle*. [Emphasis added.]

The italicized language controls the outcome of this case, yet the trial court failed to consider it as directed by an earlier panel of this Court and, now, the majority chooses to simply ignore the parties' contractual agreement and our Court's earlier remand instructions. The contractual language between the parties clearly provides that plaintiff's and defendant's intention is to have the embryo at issue, as well as any other embryos, transferred to plaintiff's uterus at some point in the future. The only manner by which this intention may be effectuated is an order

-1-

in favor of plaintiff, who has expressed a desire to act in accordance with it and have the embryo placed in her uterus. See *Mathews v Phelps*, 61 Mich 327, 332; 28 NW 108 (1886) ("In all cases the contract should be so construed as to carry into effect the intention of the parties; and such intent must be ascertained from the language of the instrument . . . ."). Because plaintiff has testified that she would have the embryo implanted in her if it was awarded to her, and defendant testified that he would either donate it to science or have it destroyed, the trial court should have ruled in favor of plaintiff because only her intent is consistent with the contractual language that the embryo be placed in her uterus.

In ruling otherwise, the trial court relied upon a separate contractual provision, which states that "[i]n the event of a divorce," the disposition of the embryos would be "[d]etermined by the applicable Judgment of Divorce or other court order." According to the trial court, this provision means that "there's not a meaningful valid agreement as to disposition of the embryo," so "the court decides." This is incorrect.

The divorce provision is not inconsistent with the above-quoted italicized language, nor does it supersede this language in any respect. The divorce provision simply indicates that the disposition of the embryos will be controlled by the judgment of divorce or other related court order. It does not, expressly or impliedly, give the court permission to disregard the controlling contractual language as agreed to between plaintiff and defendant. Because the controlling contractual language provides that the parties' intention is to have the embryo transferred to plaintiff's uterus at some point in the future, the trial court was required to effectuate that intent by interpreting the contract accordingly.

The mistaken reasoning of the trial court, now adopted by the majority here, is illustrated by the following simple example. Suppose that our Legislature enacted a statute essentially providing that, whenever the biological mother and father disagree regarding the disposition of an embryo, the intent of the mother controls regardless of any contractual language to the contrary. Would a trial court be required to issue a judgment of divorce in accordance with this statute, notwithstanding that a contract provides that disposition of the embryo is to be "[d]etermined by the applicable Judgment of Divorce or other court order"? Of course it would. It cannot be reasonably disputed that the language, "[d]etermined by the applicable Judgment of Divorce or other court order," is subject to statute. See generally, *In re Koch Estate*, 322 Mich App 383, 394-397; 912 NW2d 205 (2017) (recognizing that the Legislature may enact statutes superseding contractual language). Thus, in this hypothetical case, the trial court would not be able to apply ordinary "equitable" principles common in divorce cases.

So too here. Trial courts are not only bound by statute, but also by judicial precedent. See *In re Hague*, 412 Mich 532, 552; 315 NW2d 524 (1982). Therefore, the trial court in this case was bound to follow and apply our previous *Markiewicz* decision holding that disposition of the embryo is to be determined by the contract entered into by plaintiff and defendant. As explained, the contract compels an outcome in favor of plaintiff. Simply put, the language "[d]etermined by the applicable Judgment of Divorce or other court order" does not give the trial court free reign to apply ordinary "equitable" principles common in divorce cases when there is both contractual

language and judicial precedent to the contrary. Consequently, because the trial court ruled otherwise, we should reverse.[1]

Alternatively, even if the trial court did not err in its contractual interpretation, I would, at a minimum, vacate its order and remand to that court for further proceedings. In her motion for reconsideration, plaintiff argued that she is a Roman Catholic, that "[t]he official teachings of the *Catechism of the Catholic Church*, as promulgated by Pope John Paul II in 1992, oppose all procedures whose direct purpose is to destroy an embryo or fetus," and that as a result, she has a religious belief against destruction of the embryo. Moreover, in our previous decision, we noted that "[a] party's stated belief that an embryo is a human being, as opposed to mere property, is . . . relevant to this inquiry" as to proper disposition of the embryo. *Markiewicz*, unpub op at 9-10. Because the trial court was specifically directed by this Court to consider plaintiff's religious beliefs but failed to do so, its order should be vacated and the case remanded to that court for further proceedings consistent with this Court's previous *Markiewicz* decision. This is especially true where the trial court apparently failed to do as directed because it misunderstood our previous decision in this regard.[2]

This case also should be vacated and remanded to the trial court to address plaintiff's rights under Const 1963, art 1, § 28(1), which provides that "[e]very individual has a fundamental right to reproductive freedom, which entails the right to make and effectuate decisions about all matters relating to pregnancy, including but not limited to prenatal care, childbirth, postpartum care, contraception, sterilization, abortion care, miscarriage management, and infertility care." As the trial court interpreted the contract as giving it the authority to award the embryo to defendant for donation or destruction notwithstanding plaintiff's wishes to use the embryo for reproductive purposes, that ruling infringes upon her constitutional right to "effectuate decisions about all matters relating to pregnancy . . . and infertility care." *Id*. In other words, as the majority suggests,

---

[1] Respectfully, the trial court's ruling is the most erroneous application of the contractual language possible under the facts of this case. The divorce provision lists four options in the event of a divorce: (1) "Discarded by the program," (2) "Donate embryos for training of laboratory personnel," (3) "Determined by the applicable Judgment of Divorce or other court order," and (4) "Donate embryos to an embryo donation center." The parties in this case, as noted, selected the third option, which implies a rejection of the remaining three options. Yet, by ruling in favor of defendant, the trial court necessarily embraced one of those three remaining options.

[2] The majority considers this issue waived "[b]ecause [plaintiff] raised this issue for the first time in a motion for reconsideration . . . ." Ordinarily, I would agree with the majority. See *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015). However, the trial court stated in its opinion from the bench on remand that "[t]his is not a referendum on Right to Life or any, there was to none of that in this case and *it's not relevant to anything in this case*." (Emphasis added.) Thus, it appears that even if plaintiff had attempted to present evidence of her religious beliefs at the hearing, the trial court would have refused to consider it. Therefore, I believe that the ordinary rule concerning preservation of issues in motions for reconsideration is inapplicable here. This case should be remanded to the trial court with more explicit instructions to consider the parties' respective beliefs about human life, including plaintiff's religious beliefs.

this issue involves "competing views from [plaintiff] and [defendant], and . . . whose 'rights' to the disposition of the embryo were to be vindicated and whose 'rights' were to be impaired." It is far from clear to me that the outcome in this case correctly balances those rights consistent with Const 1963, art 1, § 28(1).[3]

To summarize, because the parties' contract compels an outcome in favor of plaintiff, I would reverse the trial court's order to the contrary and remand to that court for entry of an order in favor of plaintiff. Alternatively, I would vacate the trial court's order and remand to that court for further proceedings to address plaintiff's religious beliefs and the impact of Const 1963, art 1, § 28(1) on this case.

Thus, I respectfully dissent.


/s/ Michael J. Riordan

---

[3] The majority reasons that Const 1963, art 1, § 28 cannot apply here because that provision only applies to state action, and "[i]n this case, the state is not attempting to take or curtail any action, which involves a private dispute between [plaintiff] and [defendant]." However, "judicial action is not immunized" from constitutional protections simply because it is in accordance with "the state's common-law policy" or "the terms of a private agreement." *Shelley v Kraemer*, 334 US 1, 20; 68 S Ct 836; 92 L Ed 1161 (1948). For example, judicial enforcement of a private, racially restrictive contract constitutes state action that violates the Fourteenth Amendment. *Id*. Thus, to the extent that the trial court's ruling in this case was compelled by state divorce law or the terms of the contract, or both, it is plausible that Const 1963, art 1, § 28(1) was nonetheless violated.

The majority's suggestion that Const 1963, art 1, § 28 might not be applicable here because constitutional provisions are presumptively not retroactive misses the mark. The *Shelley* framework applies here because Const 1963, art 1, § 28 now is effective. Therefore, at a minimum, the majority's decision may be unconstitutional. This is especially so in light of the fact that the trial court and, now the majority, is depriving plaintiff, a woman, her fundamental right to reproductive freedom as now enshrined in our Constitution.