*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NQ18, LLC, FRED BENOIT, LINDA KUBLIN, and JIM KANE,

Plaintiffs-Appellees,

v

FPPS MOOSE CONDOMINIUM ASSOCIATION, LEANNE DEUMAN, and BERNICE RUTECKI,

Defendants-Appellants.

UNPUBLISHED
January 27, 2025
2:51 PM

No. 368767
Chippewa Circuit Court
LC No. 2020-016095-CH

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In this condominium dispute, defendants, FPPS Moose Condominium Association (the association), Leanne Deuman, and Bernice Rutecki, appeal as of right the trial court's order denying summary disposition in their favor under MCR 2.116(C)(10) (no genuine issue of material fact) and granting summary disposition in favor of plaintiffs, NQ18, LLC (NQ18), Fred Benoit, Linda Kublin, and Jim Kane, under MCR 2.116(I)(2) (opposing party entitled to summary disposition). The trial court determined that a provision in an amendment to the association's bylaws, which meant to restrict ownership to two condominium units per individual or entity, was illegal, unenforceable, and void. Because the trial court correctly concluded that the amendment was unreasonable, we affirm.

## I. BACKGROUND

This case involves a dispute over a condominium bylaw that prohibited ownership of multiple units by a single owner or entity by referencing an otherwise unrelated Fannie Mae selling guide. The FPPS Moose Condominium is a 12-unit condominium located in Sault Ste. Marie, Michigan. Benoit, Kublin, and Kane are three individual owners of condominium units. NQ18 is a corporate entity owned by Benoit that also owns condominium units. Defendants are the condominium association and two individual owners of condominium units, Deuman and Rutecki. There are 12 total units in the condominium.

-1-

In 2017 and 2018, Benoit and his company, NQ18,[1] purchased three units. Benoit purchased one in May 2017 and another in July 2017. NQ18 purchased one unit in April 2018. As discussed later, NQ18 purchased another unit after the association enacted the bylaw at the center of this dispute.

The condominium's Master Deed provides that "the condominium documents may be amended for a proper purpose[.]" It also provides the process for amendments.

An amendment to the condominium's bylaws was recorded with the Register of Deeds on December 9, 2019, following approval by ⅔ of the co-owners. The amendment provided, in pertinent part:

> 3. The following Subsection p is added to the end of Section 3 (Specific Prohibitions) of Article VII of the Bylaws:
>
> p. An Owner may not violate the single-entity ownership restriction as promulgated by Fannie Mae, which restriction prohibits an individual or individuals, or any family members of the individual(s) to the second degree of consanguinity, or any investor group, partnership, LLC, corporation, trust or other entity owned or controlled to any degree by the individual(s) from owning more than two Units in the Project.

On December 20, 2019, Benoit, acting through NQ18, purchased another condominium unit. This resulted in Benoit and NQ18 owning four of the 12 units.

In August 2020, plaintiffs filed suit, in pertinent part, asking the trial court to declare that the amendment was illegal and unreasonable under the Condominium Act, MCL 559.101 *et seq.*, and the condominium's Master Deed. Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that the amendment was valid because it had been presented and approved in compliance with the condominium documents and Condominium Act. They also argued that the purposes of the provision were to preserve the residential character of the condominium and to maintain eligibility for financing from Fannie Mae. Defendants also requested that the trial court order Benoit to divest his ownership of the unit purchased after the amendment was recorded.

Plaintiffs countered with a motion for summary disposition under MCR 2.116(I)(2), arguing that plaintiffs should instead be granted summary disposition. Plaintiffs argued (1) that the bylaw was invalid because it was enacted for an improper purpose—namely, to single out Benoit—and therefore violated the Master Deed's requirement that any amendment of condominium documents be for "a proper purpose," and (2) that because the Fannie Mae restriction for lending institutions in the bylaw was inapplicable, the bylaw was unreasonable and therefore violated MCL 559.146 of the Condominium Act, which requires that restrictions on condominiums be reasonable.

---

[1] Benoit and NQ18 were often referred to interchangeably before the trial court.

The trial court agreed with plaintiffs and granted their countermotion for summary disposition under MCR 2.116(I)(2). This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action seeking declaratory relief." *Mich Alliance for Retired Americans v Secretary of State*, 334 Mich App 238, 252; 964 NW2d 816 (2020). This Court reviews de novo questions involving the interpretation and application of statutes. *Linden v Citizens Ins Co of America*, 308 Mich App 89, 91; 862 NW2d 438 (2014). Under de novo review, this Court reviews legal issues independently, without deference to the lower court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). "Condominium bylaws are interpreted according to the rules governing the interpretation of a contract." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). This Court reviews de novo the proper interpretation of an unambiguous contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

When there is no genuine issue of material fact, except to the amount of damages, the moving party is entitled to judgment or partial judgment as a matter of law. See MCR 2.116(C)(10). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 507; 991 NW2d 230 (2022) (quotation marks and citation omitted). The court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). However, "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." MCR 2.116(I)(1). "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

## III. LAW AND ANALYSIS

Defendants argue that the trial court erred by determining that the bylaw was unreasonable under the Condominium Act because it was properly enacted, and a condominium is permitted to restrict the sale of condominium units. We disagree. The provision is invalid because provisions must be reasonable, and it was unreasonable to include a provision that purports to require co-owners to comply with a requirement in a selling guide that is only applicable to institutional lenders. We note that defendants have abandoned this argument by failing to address the basis of the trial court's decision, which was that the specific Fannie Mae provision at issue was an unreasonable restriction under MCL 559.146 regardless of whether a condominium may generally restrict the sale of units under MCL 559.156. Even if the issue were not abandoned, defendants' claim would fail on the merits.

At the outset, the issue is abandoned. This Court need not consider granting a party relief when the party's argument does not address the basis of the trial court's ruling. *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). "A party may not merely announce a position and leave this Court to discover and rationalize the basis for the claim." *In re Bell*, 341 Mich App

596, 602-603; 991 NW2d 251 (2022) (quotation marks and citation omitted). "When a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Traverse City Record-Eagle v Traverse City Area Pub Sch Bd of Ed*, 337 Mich App 281, 296; 975 NW2d 104 (2021) (quotation marks and citation omitted). Further, "this Court will not scour the record to determine whether there exists a genuine issue of fact, instead focusing only on those specific facts that have been duly set forth by the parties." *Platt Convenience, Inc v Ann Arbor*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359013); slip op at 7 (quotation marks and citation omitted).

Here, the trial court granted summary disposition on the basis that it agreed with plaintiffs that the Fannie Mae restriction was an unreasonable restriction because it concerns lending institutions and has no place in the bylaws or condominium documents. Defendants do not address this ruling at all. They merely argue that bylaws *may* provide restrictions on the sale of units and that the Fannie Mae selling guide includes single-entity ownership in its list of ineligible projects. Defendants do not cite any legal authority to support their argument, much less address the trial court's decision that the restriction was *unreasonable*.

Even if defendants had not abandoned the issue, their appeal would fail on the merits because the trial court did not err by concluding that incorporating into the condominium bylaws a restriction from a Fannie Mae selling guide that applies only to lending institutions constituted an "unreasonable restriction" under MCL 559.146. Generally, under the Condominium Act, condominium bylaws "may be amended, even if the amendment will materially alter or change the rights of the co-owners or mortgagees, with the consent of not less than ⅔ of the votes of the co-owners and mortgagees." MCL 559.190. Condominium bylaws may contain provisions "[f]or restrictions on the sale, lease, license to use, or occupancy of condominium units." MCL 559.156. The Condominium Act provides that co-owners may impose reasonable restrictions on condominium units in a project:

> The developer or a co-owner may impose reasonable restrictions or covenants running with the land upon a condominium unit in the condominium project, in addition to the reasonable restrictions and covenants as may be contained in the condominium documents, so long as such restrictions and covenants are not otherwise prohibited by law and as long as they are consistent with the condominium documents. The restrictions and covenants may include provisions governing the joint or common ownership of condominium units in the condominium project and the basis upon which the usage of the condominium unit or condominium units may be shared from time to time by the joint or common owners thereof. [MCL 559.146.]

The Michigan Supreme Court explored the use of "reasonable" when used in legislation and stated:

> The term "reasonable" commonly refers to that which is "agreeable to or in accord with reason; logical," or "not exceeding the limit prescribed by reason; not excessive[.]" The term "reasonable" has also been defined to mean "fair, proper, or moderate under the circumstances" and "[f]it and appropriate to the end in view." [*Krohn v Home-Owners Ins Co*, 490 Mich 145, 159; 802 NW2d 281 (2011) (citations omitted; alterations in original).]

-4-

What is "reasonable" should be determined under an objective perspective unless the statute contains language suggesting that it be determined on a subjective basis. *Id*. at 163.

We interpret condominium bylaws "according to the rules governing the interpretation of a contract." *Tuscany Grove Ass'n*, 311 Mich App at 393. This Court examines the plain language of the bylaws and interprets the words according to their plain and ordinary meanings. *Id*. When interpreting contractual language, this Court considers the contractual language as a whole. *Skanska USA Bldg Inc v MAP Mech Contractors, Inc*, 505 Mich 368, 379; 952 NW2d 402 (2020). "When a contract incorporates a writing by reference, it becomes part of the contract, and courts must construe the two documents as a whole." *In re Koch Estate*, 322 Mich App 383, 399; 912 NW2d 205 (2017).

Here, after reviewing the language of the Fannie Mae restriction from the selling guide,[2] the trial court determined that the language applied to banks and lending institutions and did not have a place in condominium bylaws. It therefore concluded that it was an unreasonable restriction. The First Amendment requires a co-owner to comply with the "single-entity ownership restriction as promulgated by Fannie Mae, which restriction prohibits an individual or individuals . . . from owning more than two Units in the Project." The trial court's conclusion was correct for at least two reasons: (1) the Fannie Mae restriction does not relate to condominium owners at all, and (2) it does not prohibit individuals from owning multiple units in a condominium.

First, and most obviously, the evidence that the parties submitted indicates that Fannie Mae does not originate mortgage loans or lend money directly to borrowers, and defendants have provided nothing to refute this. Fannie Mae, does not directly lend money to borrowers. It purchases mortgages or secures mortgages. By way of illustration, Fannie Mae's "What We Do" information, contained within the portion of the selling guide that the parties submitted, states that "we don't originate mortgage loans or lend money directly to borrowers." In this respect, the selling guide does not appear to apply to entities that defendants intended to restrict. Put differently, it is not clear that a person *could* violate the Fannie Mae restriction because they do not apply to owners.

Second, contrary to the amendment's language, the Fannie Mae selling guide—at least the portions that the parties submitted to the court—does not prohibit *individuals* from owning more than two units in a project. Support for the conclusion that the guide excerpts provided to the court do not actually prohibit individuals from owning more than two units in a project may be found in the definition of the "single-entity ownership requirement" itself. The Fannie Mae guide defines single-entity ownership as existing when the same individual, investor group, partnership, or corporation owns more than two units in a project with 5 to 20 units. Although the guide refers to the "single-entity ownership requirement" and indicates that this requirement may be "waived

---

[2] The parties presented excerpts from a Fannie Mae selling guide. Though the plain language of the amendment does not clearly state which portions of the Fannie Mae restrictions it incorporates, the parties appear to agree that it relates to specific portions of the Fannie Mae selling guide presented to the trial court. The potential vagueness of the amendment and lack of clarity on what it references is not at issue in this appeal.

when the transaction is a purchase transaction that will result in a reduction of the single-entity ownership concentration" the excerpts that the parties have provided are incomplete. So it is not clear what this requirement actually applies to or what Fannie Mae will or will not do if this requirement is not met. The amendment's attempt to incorporate the Fannie Mae selling guide into the bylaws leads to an unreasonable restriction because the provision in the bylaws does not apply in the manner in which it claims to apply; it does not apply to individuals at all.[3]

To simplify, it appears that defendants' goal was to prevent a single entity from owning more than two units within the condominium. But the amendment does not accomplish that goal. Because it appears to be largely unrelated to that goal or condominium ownership, we can conclude that the trial court correctly decided that it was unreasonable. In light of our conclusion, we need not address whether the trial court properly granted summary disposition on the alternate basis that the amendment was enacted for the improper purpose of singling out Benoit for enforcement, contrary to the condominium's Master Deed.

We affirm.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado

---

[3] Had the First Amendment simply provided that a co-owner could not own more than two units in the project, without attempting to incorporate the Fannie Mae selling guide, a different question would be presented. However, this is not what the First Amendment states, and the court was not called on to determine whether such a stand-alone provision would be a reasonable restriction under MCL 559.146.